IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF FLORIDA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil No. 5:18-cv-539-JSM-PRL |
| ) | |
| PHILIP MOTT HARRIS II and ) | |
| 24/7 TAX SERVICES, LLC, ) | |
| ) | |
| Defendants. ) | |

### REPORT AND RECOMMENDATION[1]

The United States brought this action to permanently enjoin Defendants Philip Mott Harris II and 24/7 Tax Services, LLC, from acting as tax return preparers alleging that they and their employees have spent years filing false tax returns and reaping large ill-gotten gains. On January 14, 2020, the Court granted the United States' motion for preliminary injunction. (Doc. 49). Now, the United States has moved for summary judgment seeking an order of permanent injunction and an order requiring Defendants to disgorge their ill-gotten gains. (Doc. 39).

Defendants failed to respond to the motion for summary judgment so the Court directed Defendants to show cause why the motion should not be granted. (Doc. 47). Defendants filed a cursory one-page response stating that the entry of summary judgment at this stage in the case would be premature and would cause harm. (Doc. 44). Defendants also asserted that there remain genuine issues of fact, but they have not identified any specific issues, nor have they offered any evidence in opposition. For the following reasons, I submit the United States' motion for summary judgment should be **GRANTED.**

---

[1] Within 14 days after being served with a copy of the recommended disposition, a party may file written objections to the Report and Recommendation's factual findings and legal conclusions. *See* Fed. R. Civ. P. 72(b)(3); Fed. R. Crim. P. 59(b)(2); 28 U.S.C. § 636(b)(1)(B); Local Rule 6.02. A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation. *See* 11th Cir. R. 3-1.

I. **Undisputed Facts**[2]

Harris's involvement in tax preparation began in 2011 at LBS Tax Services. Doc. 33-4, Harris Sept. 23, 2015 Deposition ("Harris I Depo") at 14:11-15:25, 16:6-12. Harris had no prior experience preparing tax returns and received his training on tax preparation and running a tax business from LBS and Tonya Chambers. *Id.;* Doc. 33-6, Harris Oct. 16, 2019 Deposition ("Harris III Depo") at 6:11-7:4, 9:2-11:7. However, within only a few months he was managing the store. Harris opened and managed his own LBS store in 2012 and continued to work there through 2014. Harris I. Depo at 16:18-18:18, 30:19-25, 32:2-33:7, 34:1-3; Harris III Depo at 38:4-9. In 2014, the United States brought an action against LBS and Ms. Chambers and they were ultimately enjoined from the same type of conduct alleged in this case. *See U.S. v. Demesmin, et al.*, 6:14-cv-1537 (M.D. Fla.).

In December 2014, Harris started 24/7 Tax Services, LLC using his training from LBS and Ms. Chambers. Harris I Depo at 32:18-21. Harris is the sole owner and he personally prepares tax returns for compensation. Harris also trained his employees, who had no prior tax preparation experience, to prepare tax returns. Harris III Depo at 38:22-39:11, 39:16-40:21, 41:12-44:6, 53:3-20, 55:10-59:2. His tax return preparers received minimal training on tax law and during their depositions they were unable to explain basic concepts of tax preparation. Doc. 33-30, Montes Deposition at 6:17-7:9, 22:8-23:17, 25:5-13, 26:10-27:10, 28:18-29:15, 42:11-20, 61:7-63:20; Doc. 33-10, Bello Deposition at 8:5-10, 10:8-11:5, 11:14-23, 13:14-14:5, 15:3-16:18, 17:5-18:7, 18:24-19:25, 23:2-17, 35:12-36:25, 39:4-41:6; Doc. 33-29, Mitchell Deposition at 4:20-6:18, 8:9-9:14, 59:19-60:4, 60:14-61:17. In 2019, Harris alone prepared tax returns at

---

[2] In support of the instant motion, the United States also relies on the evidence submitted in support of its motion for preliminary injunction. As noted above, Defendants have failed to offer any evidence to counter any factual assertions made by the United States.

24/7 Tax Services, aided by this fiancée, Julissa Bello who admits she is "[n]ot very familiar" with tax law. Harris III Deposition at 154:1-6; Bello Deposition at 18:24-19:2.

Harris "went from store to store every day," and had office managers present at stores when he was not there. Harris I Depo at 82:20-83:16; Harris III Depo at 62:9-16. Harris reviewed the returns prepared at 24/7 Tax Services and preparers called him with questions while working on returns. Only Harris had IRS-issued Electronic Filing Identification Numbers ("EFIN") to electronically file tax returns with the IRS from all 24/7 Tax Services stores, although he allowed store managers to file returns. Harris III Depo at 69:17-25, 70:5-13; Doc. 39-2, Declaration of IRS Revenue Agent Joseph Conroy at ¶5.

Defendants made false claims on customers' tax returns to generate a higher (albeit bogus) refund. This allowed Defendants to collect high (often undisclosed) fees. Defendants' customers generally lack sophistication with respect to tax return preparation and trust and rely on the return preparer. Brown Dep. 6:1-19; Bedgood Dep. 5:23-6:9, 22:17-23; Castagner Dep. 5:16-6:5; Allen Dep. 5:4-15; A. Hagstrom Dep. 7:25-8:17; Trout Dep. 5:12-22; V. Graves Dep. 5:19-6:9, 44:25-46:21; R. Graves Dep. 36:10-19; Scofield Dep. 4:18-5:2; Vanlent Dep. 4:23-5:8; Robles Dep. 4:19-5:5; Oviedo Dep. 5:6-19; Powell Dep. 8:5-16; Parsons Dep. 8:24-9:22; Davis Dep. 6:3-10, 36:16-37:3; Smith Dep. 23:12-21, 39:19-40:4; G. Gonzalez Dep. 5:18-6:11; Atkins Dep. 4:18-5:6; Navarro Dep. 4:14-24, 26:24-27:15; Moret Dep. 6:20-7:11, 12:24-13:23; J. Mendoza Dep. 9:12-10:1; De los Santos Dep. 9:1-14, 29:20-30:7.

From 2015 to 2019, Defendants prepared and filed a significant number of tax returns: 801 in 2015; 380 in 2016; 497 in 2017; 310 in 2018; and 251 in 2019. Conroy Declaration at ¶¶ 5-9; Doc. 39-3, Declaration of Amanda Reinken at ¶ 9.

The United States has presented substantial –and wholly unrefuted—evidence[3] showing a widespread pattern of highly inaccurate returns being filed by Harris and other preparers at Defendants' offices from 2015 to 2019, including:

- claiming, on Forms Schedule C (used to report income and expenses related to self-employment), false business expenses for thousands of dollars (to reduce or eliminate the customers' taxable income, often in connection with claiming the Earned Income Tax Credit), purportedly related to non-existent businesses;

- reporting on Forms Schedule C expenses (generally in large, fabricated amounts) related to customers' hobbies (such as "Little League Sponsorships" or "hunting trips");

- falsely reporting self-employment income as "Wages, salaries, tips, etc." on line 7 of the Form 1040 tax return, described on the return as "HSH" or "Household Help" income, in order to improperly circumvent reporting self-employment taxes (Medicare and social security taxes) which is taxed at a rate of 15.3%;

- claiming bogus education credits, by reporting false education-related expenses not based on the actual amount of expenses incurred by the customer, but instead on amounts that the Defendants predetermined (specifically $3,999 or $1,999);

- claiming false deductions on Forms Schedule A, including for fabricated job-related expenses;

---

[3] The United States has submitted depositions of Harris (Docs. 33-4, 33-5, 33-6) and three of Defendants' tax return preparers (Doc. 33-10, 33-29, 33-30), as well as thirty-six depositions of customers stating that Defendants engaged in fraudulent practices with respect to the preparation and filing of their tax returns (Docs. 33-7, 33-8, 33-9, 33-11, 33-12, 33-13, 33-14, 33-15, 33-16, 33-17, 33-18, 33-19, 33-20, 33-21, 33-22, 33-23, 33-24, 33-25, 33-26, 33-27, 33-28, 33-29, 33-31, 33-32, 33-33, 33-34, 33-35, 33-36, 33-37, 33-38, 33-39, 33-40, 33-41, 33-42, 33-43, 33-44), and their corresponding tax returns and customer tax files (Docs. 34, 35, 36).

- falsely reporting that they have conducted the required "due diligence" when claiming the Earned income Tax Credit;
- failing to identify the actual paid preparer of tax returns; and
- charged excessive and often undisclosed tax preparation fees.

From 2015 through 2019, Defendants received tax preparation fees in the total amount of $1,047,549.03. Doc. 39-3, Declaration of Amanda Reinken. The fees were subtracted directly from the customers' tax refunds issued by the U.S. Treasury. The United States does not seek to disgorge all the fees. Instead, it has focused on the fees generated from tax returns prepared by Defendants that: (1) falsely reported "Household Help" or "HSH" income as wages and failed to report the required self-employment taxes ("Category A"); (2) claimed phony business income and/or expenses on Forms Schedule C resulting in phony business losses of $3,000 or more ("Category B"); and (3) falsely claimed education credits based on predetermined amounts of purported education expenses ("Category C"). The United States has identified the total number of tax returns filed by Defendants falling into each of the three categories and the corresponding fees that Defendants received from preparing those returns:

| Filing Year | Total returns filed by Defendants | CATEGORY A: Returns claiming HSH income as wages | CATEGORY B: Returns with Schedule C loss of $3,000 or more | CATEGORY C: Returns claiming education credits |
|---|---|---|---|---|
| 2015 | 801 | 34 | 287 | 45 |
| 2016 | 380 | 106 | 66 | 5 |
| 2017 | 497 | 124 | 64 | 18 |
| 2018 | 310 | 87 | 27 | 9 |
| 2019 | 251 | 37 | 6 | 14 |
| **Total** | **2,239** | **388** | **450** | **91** |

| Filing Year | CATEGORY A | CATEGORY B | CATEGORY C | Total By Year |
|---|---|---|---|---|
| 2015 | $19,329.00 | $194,901.46 | $19,983.00 | $234,213.46 |
| 2016 | $62,913.10 | $37,300.00 | $1,190.00 | $101,403.10 |
| 2017 | $77,947.00 | $32,876.00 | $4,000.00 | $114,823.00 |
| 2018 | $51,592.00 | 14,230.00 | $3,258.00 | $69,080.00 |
| 2019 | $19,300.00 | 2,570.00 | $3,485.00 | $25,355.00 |
| Total by Category | $231,081.10 | $281,877.46 | $31,916.00 | GRAND TOTAL: $544,874.56 |

There is no overlap of either tax returns or fees in Categories A, B, and C; each category contains separate and distinct tax returns and related fees. Reinken Declaration at ¶¶ 12-15. Accordingly, the United States seeks to disgorge from Defendants $544,874.56.

## II.     Summary Judgment Standard

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In applying this standard, the Court reviews "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits." *Crawford v. Carroll*, 529 F.3d 961, 964 (11th Cir. 2008). The Court considers the "evidence and reasonable factual inferences drawn therefrom in a light most favorable to the non-moving party." *Id.* The moving party bears the initial burden of establishing the nonexistence of a triable issue of fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the movant is successful on this score, the non-moving party must then come forward with sufficient evidence to establish the existence of the elements on which she will bear the burden of proof at trial. *Id.* at 322-23. The non-moving party may not simply rest on the pleadings, but must use evidence such as affidavits, depositions, answers to interrogatories, or

admissions on file to show that there is a genuine issue of material fact that remains for trial. *Id.* at 324. When, as here, the nonmovant fails to offer any evidence in opposition to the movant's assertions of fact, the Court can grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it. Fed.R.Civ.P. 56(e)(3).

### III. Discussion

#### A. Injunctive Relief

The United States' claim for injunctive relief is based on §§ 7402, 7407, and 7408 of the Internal Revenue Code. Section 7402(a) grants a district court broad authority to issue injunctions "as may be necessary or appropriate for the enforcement of the internal revenue laws," authority that is "in addition to and not exclusive of any and all other remedies" available to enforce the internal revenue laws. The Eleventh Circuit has emphasized that § 7402 encompasses a "broad range of powers necessary to compel compliance with the tax laws," and it includes the power "to enjoin interference with tax enforcement even when such interference does not violate any particular tax statute." *United States v. Ernst & Whinney*, 735 F.2d 1296, 1300 (11th Cir. 1984).

Under § 7407, a district court is authorized to enjoin a tax return preparer from specified conduct, including understating a taxpayer's liability due to an unreasonable position, recklessly or intentionally disregarding IRS rules, failing to identify himself as the paid preparer of the return, and claiming the Earned Income Tax Credit without complying with the statutory due diligence requirements. Once the United States shows any of the proscribed conduct, it need only demonstrate "that injunctive relief is appropriate to prevent recurrence of such conduct." 26 U.S.C. § 7407(b)(2). If the district court finds that the tax preparer has continuously engaged in offensive conduct, and that an injunction specifically prohibiting such conduct would not be

7

effective at preventing further abuses, "the court may enjoin such person from acting as a tax return preparer" altogether. § 7407(b)(2). *United States v. Cruz*, 611 F.3d 880, 881 (11th Cir. 2010).

Likewise, under § 7408, a district court is authorized "to enjoin any person from further engaging in specified conduct," including aiding or procuring the preparation of tax returns that are known to understate the tax liability of the filer, if the court finds that the person "has engaged in" such conduct and if "injunctive relief is appropriate to prevent recurrence of such conduct."

The United States has presented substantial and undisputed evidence supporting its request for injunctive relief under all three provisions of the tax code, including the deposition testimony of thirty-six customers, as well as tax returns prepared and filed for those customers at Defendants' stores. This evidence shows a widespread pattern of highly inaccurate returns being filed by preparers at Defendants' offices over a period of several years, including:

- claiming, on Forms Schedule C (used to report income and expenses related to self-employment), false business expenses for thousands of dollars (to reduce or eliminate the customers' taxable income, often in connection with claiming the Earned Income Tax Credit), purportedly related to non-existent businesses;

- reporting on Forms Schedule C expenses (generally in large, fabricated amounts) related to customers' hobbies (such as "Little League Sponsorships" or "hunting trips");

- falsely reporting self-employment income as "Wages, salaries, tips, etc." on line 7 of the Form 1040 tax return, described on the return as "HSH" or "Household Help" income, in order to improperly circumvent reporting self-employment taxes (Medicare and social security taxes) which is taxed at a rate of 15.3%;

8

- claiming bogus education credits, by reporting false education-related expenses not based on the actual amount of expenses incurred by the customer, but instead on amounts that the Defendants predetermined (specifically $3,999 or $1,999);
- claiming false deductions on Forms Schedule A, including for fabricated job-related expenses;
- falsely reporting that they have conducted the required "due diligence" when claiming the Earned income Tax Credit;
- failing to identify the actual paid preparer of tax returns; and
- charged excessive and often undisclosed tax preparation fees.

Defendants have failed to provide any evidence to rebut the evidence submitted by the United States – evidence which clearly supports entry of a permanent injunction. Indeed, the evidence justifies the Court's exercise of the broad powers set forth in § 7402(a) to use injunctive relief to ensure the proper "enforcement of the internal revenue laws." The evidence also shows that Defendants' preparation of tax returns with false claims and deductions warrants injunctive relief under § 7407, because it constitutes a substantial understatement of tax liability, and a reckless or intentional disregard of IRS rules or regulations; and under § 7408, because it constitutes aid in the preparation of federal tax returns knowing (or having reason to believe) that the returns understated the tax liability of the filers.

The equitable factors also weigh in favor of a permanent injunction. Based on Defendants' previous repeated actions – some of which occurred after this case was filed – it seems highly likely that future violations will occur. The entry of a permanent injunction will protect individual taxpayers from having inaccurate, frivolous or fraudulent returns filed in their name that could subject them to increased tax liability. It will also protect them from excessive tax preparation fees charged by Defendants. Moreover, every bogus refund claimed by

Defendants depletes the Treasury and the United States would have to expend additional resources to recover such tax losses.

Accordingly, the Court finds that injunctive relief is appropriate, and that a more limited injunction will not suffice to prevent the substantial harm that Defendants would likely continue to cause if not permanently enjoined. As discussed above, over the course of several years, Harris and his other tax return preparers have continually filed returns misrepresenting their customers' income, deductions, and income tax liability – and have continued to do so even after the United States filed its complaint in this action. The United States has no other adequate remedy available with which to prevent the extreme harm caused by Defendants to their customers and the United States.

### B.  Disgorgement

The United States also seeks an order of disgorgement. The broad range of powers contemplated by § 7402(a) includes the remedy of disgorgement. *United States v. Stinson*, 239 F.Supp.3d 1299, 1326 (M.D. Fla. 2017). "Disgorgement is an equitable remedy intended to prevent unjust enrichment." *S.E.C. v. Monterosso,* 756 F.3d 1326, 1337.  (11th Cir. 2014). In order to be entitled to disgorgement, the United States needs to produce "only a reasonable approximation" of Defendants' ill-gotten gains, and "[e]xactitude" is not a requirement." *Id.* Once the United States has presented an estimate, the burden shifts to Defendants to show that the government's estimate was not a reasonable approximation*. Id.*

Here, as discussed above, the unrefuted evidence shows that Defendants have unjustly enriched themselves by continuously making false claims on customers' tax returns to generate a higher (and bogus) refund, which allowed Defendants to collect high (often undisclosed) fees. *See e.g., Stinson,* 239 F. Supp. 3d at 1329 ("Because the Government presented evidence of fabricated amounts on Schedule As, Schedule Cs, and with regard to education credits and other

10

deductions, on 'return after return,' the Court finds it reasonable to use tax returns containing these types of claims to approximate Stinson's unjust enrichment."). Accordingly, disgorgement is appropriate.

The United States is not required to trace the fees that each of the Defendants received. "It is a well settled principle that joint and several liability is appropriate … where two or more individuals or entities have close relationships in engaging in illegal conduct." *S.E.C. v. Monterosso*, 557 F. App'x 917, 928-29 (11th Cir. 2014) (*quoting Calvo*, 378 F.3d at 1215). *F.T.C. v. Gem Merch. Corp.,* 87 F.3d 466, 468 (11th Cir. 1996) ("because each defendant repeatedly participated in the wrongful acts and each defendant's acts materially contributed to the losses suffered, all defendants were held jointly and severally liable."). Here, as discussed above, Harris is the sole owner of 24/7 Tax Services, LLC and he personally prepared tax returns and reviewed tax returns prepared by employees (each of whom he had trained). The tax preparation fees were deducted from customer tax returns and deposited in the business bank account over which Harris had control. *See* Harris III Depo 140:15-141:02. Accordingly, Harris and 24/7 Tax Services, LLC should be held jointly and severally liable for the ill-gotten tax preparation fees that they received in 2015, 2016, 2017, 2018, and 2019.

The United States has met its burden of showing a reasonable approximation of Defendants' ill-gotten gains. The United States has offered unrefuted evidence identifying fees disbursed to the Defendants for the preparation of three specific and distinct categories of false tax returns: Category A: falsely claimed self-employment income as "HSH" wages and failed to report self-employment taxes; Category B: falsely reported self-employed business expenses on a Schedule C and generated a phony loss reported in the amount of $3,000 or more; and Category C: falsely claimed education credits based on predetermined amounts of purported education expenses.

According to IRS records of tax returns filed and third-party records showing the tax preparation fees disbursed for those filed tax returns, Harris and 24/7 Tax Services, LLC received tax preparation fees for the three categories of tax returns in the amounts of $234,213.46 in 2015, $101,403.10 in 2016, $114,823.00 in 2017, $69,080.00 in 2018, and $25,355.00 in 2019, for a total of $544,874.56. This likely understates Defendants' ill-gotten gains because it does not include fees for other specific categories of falsified tax returns, such as those that claim improper filing statuses, nor does it capture fees for every tax return falling in Categories A, B, and C. (Reinken Declaration at ¶ 16). Defendants have offered no argument or evidence to challenge the United States' approximation.

Accordingly, a judgment of disgorgement should be entered in favor of the United States and against Philip Mott Harris II and 24/7 Tax Services, LLC jointly and severally in the total amount of $544,874.56, which is a reasonable approximation of Defendants' ill-gotten gains.

## IV.     Recommendation

Based on the record, and for good cause shown, the United States' motion for summary judgment (Doc. 39) should be **GRANTED** and a permanent injunction and order of disgorgement should be entered as follows:

A. Philip Mott Harris II and 24/7 Tax Services, LLC, and all those in active concert or participation with them, are permanently enjoined from:

> (1) acting as federal tax return preparers or requesting, assisting in, or directing the preparation or filing of federal tax returns, amended returns, or other related documents or forms for any person or entity other than themselves;
>
> (2) preparing or assisting in preparing federal tax returns that they know or reasonably should know would result in an understatement of tax liability or the overstatement of federal tax refund(s) as penalized by 26 U.S.C. § 6694;
>
> (3) owning, operating, managing, working in, investing in, providing capital or loans to, receiving fees or remuneration from,

controlling, licensing, consulting with, or franchising a tax return preparation business;

(4) training, instructing, teaching, and creating or providing cheat sheets, memoranda, directions, instructions, or manuals, pertaining to the preparation of federal tax returns;

(5) maintaining, assigning, holding, using, or obtaining a Preparer Tax Identification Number (PTIN) or an Electronic Filing Identification Number (EFIN);

(6) engaging in any other activity subject to penalty under 26 U.S.C. §§ 6694, 6695, 6701, or any other penalty provision in the Internal Revenue Code; and

(7) engaging in any conduct that substantially interferes with the proper administration and enforcement of the internal revenue laws.

B. Philip Mott Harris II and 24/7 Tax Services, LLC shall immediately and permanently close all tax return preparation stores that they own directly or through any entity, and doing business under any name;

C. Philip Mott Harris II and 24/7 Tax Services, LLC are prohibited from assigning, transferring, or selling any franchise agreement, independent contractor agreement, or employment contract related to any tax return preparation business to which they or any entity under their control is a party;

D. Philip Mott Harris II and 24/7 Tax Services, LLC are prohibited from: (1) selling to any individual or entity a list of customers, or any other customer information, for whom Philip Mott Harris II and 24/7 Tax Services, LLC, and any other business or name through which they, or those acting at their direction, have at any time since January 1, 2015 prepared a tax return; (2) assigning, disseminating, providing, or giving to any current or former franchisee, General Sales Manager, District Sales Manager, manager, tax return preparer, employee, or independent contractor of Philip Mott Harris II and 24/7 Tax Services, LLC, or any other business through which they prepare tax returns or own or franchise a tax return preparation business, a list of

13

customers or any other customer information for customers for whom Philip Mott Harris II and 24/7 Tax Services, LLC, and any other business or name through which they, or those acting at their direction, have at any time since January 1, 2015 prepared a tax return; and (3) selling to any individual or entity any proprietary information pertaining to Philip Mott Harris II and 24/7 Tax Services, LLC, and any other business or name through which Philip Mott Harris II and 24/7 Tax Services, LLC, or those acting at their direction, have at any time since January 1, 2015 prepared a tax return;

      E. Philip Mott Harris II and 24/7 Tax Services, LLC shall contact, within 30 days of this Order, by United States mail and, if an e-mail address is known, by e-mail, all persons for whom Philip Mott Harris II and 24/7 Tax Services, LLC, and their managers, employees, and tax return preparers, prepared federal tax returns or claims for a refund from January 1, 2015 and continuing through the date of this Order to inform these individuals of this Order of Permanent Injunction, including sending a copy of this Order but not enclosing any other documents or enclosures unless agreed to by counsel for the United States or approved by the Court;

      F. Philip Mott Harris II and 24/7 Tax Services, LLC shall provide a copy of this Order to all principals, officers, managers, franchisees, employees, and independent contractors of Philip Mott Harris II and 24/7 Tax Services, LLC within 15 days of this Order, and provide to counsel for the United States within 30 days of this Order a signed and dated acknowledgment of receipt of the Court's order for each person whom Philip Mott Harris II and 24/7 Tax Services, LLC provided a copy of this Order;

      G. The Court shall retain jurisdiction over Philip Mott Harris II and 24/7 Tax Services, LLC and over this action to enforce this Order and Judgment of Permanent Injunction and Disgorgement entered against them; and

H. The United States is entitled to conduct discovery to monitor Philip Mott Harris II's and 24/7 Tax Services, LLC's compliance with the terms of this Order and Judgment of Permanent Injunction and Disgorgement entered against them.

And Judgment entered in favor of the United States and against the Defendants, Philip Mott Harris II and 24/7 Tax Services, LLC, jointly and severally, in the amount of $544,874.56 for the disgorgement of the proceeds that the Defendants received for the preparation of tax returns making or reporting false or fraudulent claims, deductions, credits, income, expenses, or other information resulting in the understatement of taxes.

**DONE** and **ENTERED** in Chambers, Ocala, Florida on January 29, 2020.

_____
PHILIP R. LAMMENS
United States Magistrate Judge

Copies to:
District Judge
Counsel of record